IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES SMITH, Administrator Pendente Lite of the Estate of ETHEL WILLIAMS, deceased,

Plaintiff,

v.

MARKLEY OPERATOR, LLC, d/b/a MARKLEY REHABILITATION AND HEALTHCARE CENTER; CEDARBRIDGE FINANCIAL SERVICES, LLC; MARQUIS HEALTH CONSULTING SERVICES, LLC; MARQUIS LIMITED, LLC; TRYKO HOLDINGS, LLC; QUINTO NEXGEN, LLC; UKR NEXGEN, LLC; RSBRMK HOLDINGS, LLC; TRYKO NEXGEN HOLDINGS, LLC; NUTRACO, LLC; RELIANT PRO REHAB, LLC and JOHN DOES 1-4 (Fictitious Defendants).

Defendants.

CIVIL ACTION
NO.: 2:26-cv-02857

**OPINION**

**Slomsky, J.** **July 31, 2026**

## I. INTRODUCTION

At its core, this case deals with an allegation of medical malpractice brought by the son of a deceased nursing home patient against the facility where his mother resided. Plaintiff James Smith ("Plaintiff"), as the Administrator of the Estate of his deceased mother, Ethel Williams, filed this case against Markley Operator, LLC, d/b/a Markley Rehabilitation and Healthcare Center ("Markley"), Cedarbridge Financial Services, LLC, Marquis Health Consulting Services, LLC, Marquis Limited, LLC, Tryko Holdings, LLC, Quinto Nexgen, LLC, UKR Nexgen, LLC, RSBRMK Holdings, LLC, Tryko Nexgen Holdings, LLC, Nutraco, LLC, Reliant Pro Rehab,

LLC, and John Does 1–4 (collectively, "Defendants"), alleging the following claims: (1) negligence, (2) vicarious liability, (3) corporate liability, (4) survival, (5) wrongful death, (6) breach of fiduciary duty, and (7) aiding and abetting breach of fiduciary duty. (Doc. No. 1-1 at 37–58.)

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. No. 8.) In their Motion, Defendants argue that the Complaint should be dismissed because it relies on impermissible group pleading, that is, failing to identify specific conduct tied to each individual defendant. They also maintain that the Complaint consists of conclusory allegations that fail to state a claim upon which relief can be granted. Rather than responding to the arguments made by Defendants in the Motion to Dismiss the Complaint, Plaintiff only counters that the Court lacks subject matter jurisdiction to hear the dispute, and—repeating this argument in his separate Motion to Remand (Doc. No. 12)—the Court should instead remand the case to state court.[2] For reasons that follow, Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 8) will be granted, but without prejudice.

## II. BACKGROUND

### A. Factual History

Plaintiff James Smith is the son of Ethel Williams ("Decedent"), a former resident of the Markley Rehabilitation and Healthcare Center (the Facility). On April 26, 2024, she was admitted to Defendant Markley's facility, Markley Rehabilitation and Healthcare Center, to

---

1 Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert by motion that a complaint fails to state a claim upon which relief can be granted.

2 Plaintiff's Motion to Remand (Doc. No. 9) is discussed and denied in another Opinion of this Court. (Doc. No. 14.)

receive care and treatment for injuries.[3] (Doc. No. 1-1 ¶ 51.) Shortly after her arrival, an "Admission/Readmission Screener" documented that Decedent was admitted with sacral and left heel pressure injuries. (Id. ¶ 52.) Later the same day, a "care plan" was initiated with various "Interventions" designed to effectively treat Decedent. (Id. ¶ 54.) The care plan, however, did not include a turning and repositioning program nor a low air loss mattress—protections that Plaintiff alleges were necessary to care for his mother. (Id.) On April 28, 2024 a "Minium Data Set Assessment" was performed and confirmed the lack of a turning and repositioning program. (Id. ¶ 55.)

On April 29 and 30, 2024, while still at Markley, a series of "Physician Progress" notes documented Decedent's prior medical history at the Hospital and the details of her sacral injury. (Id. ¶¶ 56–57.) On May 1, 2024, Healing Partners, a wound care consultation service, evaluated Decedent at Markley and recommended after discussion with the staff, inter alia, a low air loss mattress and a turning and repositioning program. (Id. ¶ 59.) Later that day, Markley performed a Skin and Wound Evaluation that revealed no additional care was provided for Decedent. (Id. ¶ 62.) Despite the Healing Partners "Wound Notes" documenting use of a low air loss mattress and "Skin and Wound Evaluations" documenting "mattress with pump", the Markley Rehab Staff did not begin a turning and repositioning program, provide a low air loss mattress, or do pressure checks. (Id. ¶ 73.)

On May 29, 2024, Decedent was readmitted to Chestnut Hill Hospital[4] in a worsened condition and with a poor prognosis of recovery. (Id. ¶ 77.) Before going to Markley, she had

---

[3] Markley is the only named Defendant in this case with a facility that maintains operations in Pennsylvania. The other named Defendants are located in New Jersey, Florida, and Texas.

[4] Chestnut Hill Hospital is not a named Defendant in this case.

been at Chestnut Hill Hospital. On May 31, 2024, Decedent was deemed a candidate for hospice if the family desired. (Id. ¶ 79.) She was discharged from Chestnut Hill Hospital and went back to Markley Rehab on June 7, 2024. (Id. ¶¶ 80–81.)

Markley's June, 2024 records reveal that an intervention to turn and reposition Decedent every two (2) hours began on June 10, 2024, but by July, 2024, Decedent's sacral pressure injury continued to worsen. (Id. ¶ 84.) On August 2, 2024, Decedent's health required a sudden transfer back to Chestnut Hill Hospital, and on August 6, 2024, Decedent passed away there. (Id. ¶ 88.)

**B. Defendant Parties**

Plaintiff names twelve (12) groups of Defendants in the Complaint. This includes eleven (11) named Defendants and a number of John Does. The eleven (11) named defendants are described nearly identically. Plaintiff only changes the state where each entity was organized. Two examples from the Complaint, paragraphs five (5) and seven (7), illustrate this point:

> 5. Defendant, Markley Operator, LLC d/b/a Markley Rehabilitation and Healthcare Center, is a business corporation organized and existing under the bylaws of the Commonwealth of Pennsylvania and was engaged in the business of owning, operating, managing, and offering healthcare, medical services, nursing care, and long-term care to the public at a nursing home facility, Markley Rehabilitation and Healthcare Center ("Markley Rehab"), located at 550 East Fornance Street, Norristown, Pennsylvania 19401. Plaintiff is asserting a professional liability claim against this Defendant.
>
> ***
>
> 7. Defendant, Cedarbridge Financial Services, LLC, is a business corporation organized and existing under the bylaws of the State of New Jersey and was engaged in the business of owning, operating, managing, and offering healthcare, medical services, nursing care, and long-term care to the public at a nursing home facility, Markley Rehabilitation and Healthcare Center ("Markley Rehab"), located at 550 East Fornance Street, Norristown, Pennsylvania 19401. Plaintiff is asserting a professional liability claim against this Defendant.

(Doc. No. 1-1 at ¶¶ 5, 7.) Similar allegations appear in paragraphs nine (9), eleven (11), thirteen (13), fifteen (15), seventeen (17), nineteen (19), twenty-one (21), twenty-three (23), and twenty-five (25), which respectively refer to a Defendant and its state of organization.

### C. Allegations Regarding the Parties' Conduct

The Complaint also lists the alleged participation of each Defendant entity. Again, the conduct alleged is nearly identical as Plaintiff only changes the name of each Defendant. Two more examples from the Complaint, paragraphs six (6) and eight (8), illustrate this point:

> 6. At all times material hereto, Defendant, Markley Operator, LLC d/b/a Markley Rehabilitation and Healthcare Center, acted or failed to act by and through its agents, ostensible agents, servants, workmen, nurses, nurse's aides, and/or employees, physicians, the nursing home administrator and/or administrators responsible for formulating, adopting, monitoring, and enforcing the policies, procedures, and protocols of Markley Rehab from the time Ethel Williams was admitted to Markley Rehab on April 26, 2024, including the physicians, nurses, nurses' aides, staff members, and employees responsible for the care, supervision, treatment, and safety of Ethel Williams, starting on April 26, 2024, which includes those physicians, nurses, nurses' aides, staff, and employees identified in the records and charts of Markley Rehab, whose names cannot be discerned from the records but whose identities are known to and within the exclusive control of Defendants, all of whom were then and there acting within the scope of their authority and in the course of their employment with Defendant, Markley Operator, LLC d/b/a Markley Rehabilitation and Healthcare Center, and in furtherance of Defendant, Markley Operator, LLC d/b/a Markley Rehabilitation and Healthcare Center's business and on behalf of Defendant, Markley Operator, LLC d/b/a Markley Rehabilitation and Healthcare Center.
>
> ***
>
> 8. At all times material hereto, Defendant, Cedarbridge Financial Services, LLC, acted or failed to act by and through its agents, ostensible agents, servants, workmen, nurses, nurse's aides, and/or employees, physicians, the nursing home administrator and/or administrators responsible for formulating, adopting, monitoring, and enforcing the policies, procedures, and protocols of Markley Rehab from the time Ethel Williams was admitted to Markley Rehab on April 26, 2024, including the physicians, nurses, nurses' aides, staff members, and employees responsible for the care, supervision, treatment, and safety of Ethel Williams, starting on April 26, 2024, which includes those physicians, nurses, nurses' aides, staff, and employees identified in the records and charts of Markley Rehab, whose names cannot be discerned from the records but whose identities are known to and within the exclusive control of Defendants, all of whom were then and there acting within the scope of their authority and in the course of their employment with Defendant, Cedarbridge Financial Services, LLC, and in furtherance of Defendant, Cedarbridge Financial Services, LLC's business and on behalf of Defendant, Cedarbridge Financial Services, LLC.

(Doc. No. 1-1 at ¶¶ 6, 8.) Similar allegations regarding each named Defendant are repeated in paragraphs ten (10), twelve (12), fourteen (14), sixteen (16), eighteen (18), twenty (20), twenty-two (22), twenty-four (24), and twenty-six (26).

In addition, the Complaint alleges facts in numerous paragraphs regarding Decedent, Ethel Williams' care, medication, and treatment records but does not describe the conduct of each Defendant. (See id. ¶¶ 51–91.) In the section of the Complaint under the title "Conduct of the Defendant," there are general allegations about the responsibility of Defendants to its patients and references to apparent findings by a governmental unit. (See id. ¶¶ 92–118.) All of the above is the basis of Plaintiff's claims against Defendants in the Complaint.

### D. Procedural History

On March 18, 2026, Plaintiff filed the Complaint in the Philadelphia County Court of Common Pleas. (Doc. No. 1-1.) Service was made on ten (10) of the eleven (11) named Defendants from March 31 through April 23, 2026. On April 30, 2026, Defendants timely removed the case to the Eastern District of Pennsylvania.

On May 6, 2026, Defendants filed the Motion to Dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 8.) On May 13, 2026, Plaintiff filed a Motion to Remand to State Court. (Doc. No. 9.) The following day on May 14, 2026, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss for Failure to State a Claim. (Doc. No. 10.) Finally, on April 27, 2026, Defendants filed a Response in Opposition to Plaintiff's Motion to Remand to State Court. (Doc. No. 12.)

## III. STANDARD OF REVIEW

In the Motion to Dismiss, Defendants primarily allege Plaintiff's failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) as grounds for dismissal.

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)). "[W]here

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

As noted, Plaintiff claims that Defendants are liable under theories of (1) negligence, (2) vicarious liability, (3) corporate liability, (4) survival, (5) wrongful death, (6) breach of fiduciary duty, and (7) corporate defendant aiding and abetting breach of fiduciary duty. Plaintiff relies on the theory his deceased mother was the victim of medical malpractice from the time of her initial admission into the nursing home facility until her death.

In their Motion to Dismiss, Defendants assert that the Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff does not put each Defendant on notice of any specific wrongdoing and merely relies on impermissible group pleading without specifying the conduct of each Defendant. (Doc. No. 8 at 1–2.) In Plaintiff's Response in Opposition, he contends that Defendants' Motion should be denied because the Court lacks subject matter jurisdiction over this case. In only arguing a lack of jurisdiction, Plaintiff does not address the Rule 12(b)(6) argument on group pleading raised in Defendants' Motion to Dismiss the Complaint. In any event, Defendants' arguments will be addressed below.

First, by not addressing Defendants' argument regarding impermissible group pleading, Plaintiff concedes that the Complaint is insufficient for this reason. Plaintiff's failure to respond to this argument amounts to a waiver because "it is well-settled that failure to meet an opponent's arguments operates as a concession." Gillham v. Virgin Islands Supreme Court, No. 22-cv-00044

2023 WL 4865072, at *3 (D.V.I. July 28, 2023) (citing In re Bestwall LLC, 47 F.4th 233, 244 (3d Cir. 2022)).

Further, for most of the Complaint—specifically in identifying which Defendant has allegedly committed the claims asserted—Plaintiff fails to distinguish what acts each of them did. As noted supra, Plaintiff identifies Defendants indistinguishably in the collective as "Defendants" and asserts identical claims against each one. For example, Plaintiff asserts:

> 6. At all times material hereto, Defendant, Markley Operator, LLC d/b/a Markley Rehabilitation and Healthcare Center, acted or failed to act by and through its agents, ostensible agents, servants, workmen, nurses, nurse's aides, and/or employees, physicians, the nursing home administrator and/or administrators responsible for formulating, adopting, monitoring, and enforcing the policies, procedures, and protocols of Markley Rehab from the time Ethel Williams was admitted to Markley Rehab on April 26, 2024, including the physicians, nurses, nurses' aides, staff members, and employees responsible for the care, supervision, treatment, and safety of Ethel Williams, starting on April 26, 2024, which includes those physicians, nurses, nurses' aides, staff, and employees identified in the records and charts of Markley Rehab, whose names cannot be discerned from the records but whose identities are known to and within the exclusive control of Defendants, all of whom were then and there acting within the scope of their authority and in the course of their employment with Defendant, Markley Operator, LLC d/b/a Markley Rehabilitation and Healthcare Center, and in furtherance of Defendant, Markley Operator, LLC d/b/a Markley Rehabilitation and Healthcare Center's business and on behalf of Defendant, Markley Operator, LLC d/b/a Markley Rehabilitation and Healthcare Center.

(Doc. No. 1-1 ¶ 6.)

The unnamed agents, servants, and/or employees and other parties identified by their position are apparently the persons referred to individually. Reading the allegations in the Complaint as a whole, Plaintiff repeats these conclusory allegations against each Defendant and fails to identify which Defendant committed acts giving rise to liability.

It has been established that "a plaintiff may not plead in the collective by using the word 'Defendants' without specifying which specific defendant engaged in the specific conduct alleged by the plaintiff." Santos v. Berroa, No. 25-cv-6329, 2026 WL 184266, at *16 (E.D. Pa. Jan. 23,

2026); see also Lawal v. McDonald, 546 F. App'x 107, 113 (3d Cir. 2014) ("[T]o resolve the ambiguity regarding the precise actions each individual Defendant allegedly took, we will provide Plaintiffs a final opportunity to file a pleading that provides the factual enhancements that specify the acts each individual Defendant allegedly took.").

In the instant case, because Plaintiff impermissibly lumps Defendants together to allege conclusory allegations of wrongdoing, such group pleading is insufficient to sustain the claims. Moreover, he does not describe the acts of each individual "agents, servants, or employees." (Doc. No. 1-1 ¶ 31.)

Second, although the Complaint will be dismissed, Plaintiff will be granted leave to amend her Complaint within twenty-one (21) days. When granting a motion to dismiss for failure to state a claim, a district "should generally permit a curative amendment, unless an amendment would be inequitable or futile." Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citation omitted). Here, Plaintiff has failed to respond to the substantive arguments made in Defendants' Motion to Dismiss in the Response in Opposition. Because the Court only has one side of the argument on the substance of the Motion to Dismiss, the Court cannot determine with certainty whether re-filing would be futile. Therefore, the Court will dismiss the Complaint without prejudice and allow Plaintiff the opportunity to amend. See Burnett v. Springfield Tp., No. 13-1646, 2014 WL 3109963, at *10 (E.D. Pa. July 8, 2014) (granting a motion to dismiss without prejudice where it was unclear whether opportunity to amend would be futile). Although Plaintiff has not asked for the opportunity to amend, precedent dictates "[w]hen a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [she] has leave to amend . . . unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (emphasis in

original). Accordingly, the Court will grant leave to file an amended Complaint within twenty-one (21) days.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 8) will be granted. Plaintiff will be afforded twenty-one (21) days to file an amended Complaint. An appropriate Order follows.